[No. 2661. Decided December 20, 1897.]

HENRY HEWITT, JR., et al., *Plaintiffs*, v. TRADERS' BANK, *Defendant*, COUNTY OF PIERCE et al., *Appellants*, LEONARD HOWARTH, *Receiver of Trader's Bank*, *Respondent*.

INSOLVENCY OF BANK — LIABILITY OF RECEIVER FOR TAXES — DEDUCTION OF DEBTS FROM CREDITS.

The receiver of an insolvent bank is not liable for a tax assessed against the bank prior to its insolvency, but which had not become a lien on the bank property at the time of the receiver's appointment.

The receiver of an insolvent bank is not entitled to a deduction of debts arising on account of his trust from the credits in his hands belonging to the insolvent bank.

Appeal from Superior Court, Pierce County.—Hon. J. A. WILLIAMSON, Judge. Modified.

*A. R. Titlow*, for appellant.

*Herbert S. Griggs*, for respondent.

The opinion of the court was delivered by

REAVIS, J.—The county treasurer of Pierce county filed his petition, on behalf of the county in the above entitled cause, claiming certain taxes alleged to be due from the insolvent bank for the year 1894, and from the receiver of the bank for the years 1895-6. The shares of capital stock of the bank were duly assessed on the first day of April, 1894, by the county assessor, and the county treasurer now demands from the receiver the payment of the tax so levied upon the shares of capital stock for the year 1894. On the 19th of May, 1894, the bank was duly adjudged insolvent, and a receiver appointed, who took possession of its assets on the same day, and has ever since been in charge of the same as receiver. There having been no assessment made by the county assessor for the years 1895-6 upon the assets in the custody of the receiver, the treasurer proceeded to make such assessment and duly extended the same upon the tax roll for said years. The assessment for the year 1894 was made pursuant to sections 21, 22 and 23 of Laws of 1893, p. 333 (Bal. Code, §§ 1677-1679).

The superior court determined that the tax for the year 1894 could not be charged against the receiver or the assets of the insolvent bank in his possession, and that for the years 1895-6 the receiver was entitled to deduct from the true and fair value of the moneys and credits in his hands on April 1, 1895, and on April 1, 1896, the respective amounts of the just, *bona fide* and absolute debts of said bank then owing by it on said respective dates. The bank was insolvent at those dates and its debts largely exceeded the moneys and credits in the possession of the receiver, and the court allowed taxes against the receiver on certain fixtures and other personal chattels in charge of the receiver for the years 1895-6.

1. The appellants, the treasurer and county, maintain that the assessment upon the capital stock of the bank having been duly made on the first day of April, 1894, and it being personal property that was assessed, the bank being a going concern at that time and the tax not having been paid by the stockholders or offered to be paid, the bank's liability became absolute; and it is also contended that the court had no authority to say whether the bank stock, on the first day of April, 1894, was worth anything; that the assessment having been made and the board of equalization having adjourned without reducing it, the value became fixed, and for the purpose of taxation bank shares are worth what their market value is at the time such assessment is made, and not what their value might be upon the consummation of a contemplated closing of the bank's business and division made among the shareholders, and cite as authority *Olympia Waterworks v. Gelbach*, 16 Wash. 482 (48 Pac. 251); *National Bank of Commerce v. City of New Bedford*, 155 Mass. 313 (29 N. E. 532).

We are inclined to agree with appellants that the assessment and valuation of the bank stock was fixed and final, and the court, in the absence of fraud, could not review the valuation, and that the stockholders were justly liable for the tax so assessed, but the liability of the bank was secondary. While the names of the owners of the shares of stock must be ascertained and the stock assessed directly to them, yet the assessment is in the nature of a garnishment process against the bank itself. *Paul v. McGraw*, 3 Wash. 296 (28 Pac. 532).

Section 23 of the revenue act, *supra*, says:

" . . . the corporation and the officers thereof shall have a lien on all the shares in such bank or other corporation and on all the rights and property of the shareholders in the corporate property for the payment of said taxes;

which lien may be foreclosed by a similar proceeding as under chattel mortgages."

Section 22, *supra,* declares:

"If such tax is not so paid, the said bank or other corporation shall be liable for the same."

Here, before the liability had attached or any lien following the same, the bank became insolvent. Its capital stock was valueless, in fact, destroyed. Manifestly there was nothing belonging to the stockholder upon which a lien could attach in favor of the bank and the tax on the stock could not be collected from the receiver by proceedings in the nature of a garnishment as provided by the revenue act. In the case of *Baker v. King County,* 17 Wash. 622 (50 Pac. 481), it was held that

"No suit for such tax can be maintained against the receiver of an insolvent national bank, where the property represented by the shares has disappeared, since the receiver could not in such cases be reimbursed, and the tax would fall on the assets of the bank, which belong to the creditors, thereby indirectly violating the rule forbidding a state to tax the capital stock of a national bank."

The reasoning in that case applies to the one under consideration now, and is decisive upon the liability of the receiver for the tax of 1894.

2. The appellants also complain that the court erred in not granting judgment to them for the tax on the full amount of money and personal property in the custody of the receiver on the first days of April, 1895 and 1896.

As we have seen, the court did allow the tax upon the furniture and fixtures of the bank, but nothing further. Section 8 of the revenue laws of 1893, p. 327 (Bal. Code, § 1664), makes it the duty of the receiver to list all of this property for taxation; that is, property of corporations whose assets are in the hands of receivers shall be listed by such receivers or their agents; and that he shall, under

section fifteen of the same act, make out and deliver to the assessor, when required, a statement, verified by his oath, of all the personal property in his hands or under his control, and which by the provisions of the act he is required to list for taxation.

Here the receiver had no debts arising on account of his trust that were unpaid at the times mentioned, and hence there could be no deduction upon that account. Taxes are an enforced contribution upon persons and property levied by authority of the state for the support of the government. They are not debts in the ordinary sense of the word. The state may distrain and sell property for the tax if not paid when demanded, without first obtaining a judgment, and as between it and the creditors of the person owing the tax, the state is entitled to the preference. The claim of the government for the payment of taxes upon the citizen is paramount to all other claims and liens against his property. *Dunlap v. County of Gallatin*, 15 Ill. 7; *Jack v. Weiennett*, 115 Ill. 105 (56 Am. Rep. 129, 3 N. E. 445).

This court has recently determined, in *Pullman State Bank v. Manring*, *ante*, p. 250, that money is not included within the constitutional proviso as credits from which a deduction of debts can be made, and has also decided that the stockholder in a state bank is entitled to have a deduction of his individual debts from his credits, including his bank stock, and the same rule is also determined in the case of a stockholder in a national bank in *Newport v. Mudgett*, decided this session (*ante*, p. 271). There can be no deduction allowed under our revenue laws from credits belonging to the bank. The tax is primarily upon the shares of the capital stock and such deductions of debts from credits are made in favor of the stockholder. The assets of the bank in the custody of the receiver under the state of facts disclosed by the findings in this case are a trust fund for the

payment of the creditors. They must be finally distributed to its creditors. It seems there is no procedure by which the creditors can claim a deduction of the bank's debts from the credits held by the receiver, for the assets of the bank may be viewed here merely as credits in favor of each of the bank's creditors; then such creditor, if he had a right of deduction, would have such deduction made from his individual credits, including this credit which is his claim to a per cent. of the proceeds in the final distribution of the assets of the bank. It would be impracticable and require further legislation to allow such deductions.

Our conclusion is that the taxes for the years 1895-6 assessed against the receiver upon all personal property in his possession and all of the assets of the insolvent bank must be paid by the receiver from the assets now in his possession, and although some question has been raised by respondent as to the manner in which the assessment was made, we are content with the view which the superior court took of the assessments for those years and its valuation of the assets of the bank so assessed to the receiver. The appellants will recover the costs of the appeal.

The judgment of the superior court is therefore modified to conform to this opinion.

SCOTT, C. J., and ANDERS, DUNBAR and GORDON, JJ., concur.